IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| SAMUEL SMITH HARRIS, | : | PRISONER CIVIL RIGHTS |
|    Plaintiff, | : | 42 U.S.C. § 1983 |
| | : | |
| v. | : | |
| | : | |
| STAFF SGT. SEWELL, of the | : | CIVIL ACTION NO. |
| Lumpkin County Detention Center, | : | 2:09-CV-0136-RWS |
|    Defendant. | : | |

## ORDER AND OPINION

In this pro se civil rights action, Samuel Smith Harris ("Plaintiff") seeks damages from Staff Sergeant Sewell ("Defendant") of the Lumpkin County Detention Center ("LCDC") for his alleged use of excessive force during an altercation with Plaintiff on June 11, 2009. The matter is now before this Court on Defendant's motion for summary judgment (Doc. 39), Plaintiff's response in opposition (Doc. 42), and Defendant's reply (Doc. 44). For the reasons discussed below, this Court concludes that Defendant should be granted summary judgment in his favor and this action should be dismissed.

## I. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

AO 72A
(Rev.8/82)

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  The party seeking summary judgment bears the initial burden of demonstrating that no dispute as to any material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party's burden may be discharged by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support [an essential element of] the nonmoving party's case." Id. at 325.  In determining whether the moving party has met this burden, the district court must "view the evidence and all factual inferences . . . in the light most favorable to the party opposing the motion." Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999) (internal quotation omitted).

Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The nonmovant may not rest upon mere allegations or denials contained in his pleadings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Additionally, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position" is insufficient to defeat summary judgment.

2

Id. at 252.  Rather, the court must determine "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict."  Id.

## II.  STATEMENT OF FACT

Defendant has submitted a Statement of Material Facts supported by his declaration, Plaintiff's deposition, and other documentary evidence.  (Doc. 39, Statement of Material Facts, Exs. A-B, Pl.'s Dep.).  Plaintiff, however, has failed to file a response to Defendant's Statement of Material Facts, as required by Local Rule 56.1B.(2)a.  Accordingly, the Court deems Defendant's undisputed facts to be admitted.  See LR 56.1 B.(2)a.(2), NDGa; Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008) (stating, "The proper course in applying Local Rule 56.1 at the summary judgment stage is for a district court to disregard or ignore evidence relied on by the respondent-but not cited in its response to the movant's statement of undisputed facts- that yields facts contrary to those listed in the movant's statement").

On June 11, 2009, Plaintiff, who had been an inmate at the LCDC for about a month, went to sleep after breakfast and did not hear officers call the inmates for inspection.  (Pl.'s Dep. at 53, 56).  An officer alerted Defendant, who was conducting the inspections that day, that an inmate had refused to get out of bed for inspection. (Doc. 39, Ex. A, Incident Report ¶¶ 1-2).  Pursuant to the LCDC's rules, inmates were

3

required to report for inspections by getting out of bed and lining up against a wall and to have their bedding and clothing folded and rolled up. (Pl.'s Dep. at 60). Plaintiff maintains that he was awakened when Defendant slammed his cell door. (Id. at 63).

When Defendant asked Plaintiff why he was sleeping when all the other inmates were lined up for inspection, Plaintiff responded that there usually was no inspection on this particular day. (Id.). Although Plaintiff acknowledged that the LCDC's rule book states that inspections occur every day, he stated that the norm was for inspections to occur only on Monday, Wednesday, and Friday. (Id. at 55-56, 58). Because it was Thursday, Plaintiff believed that he could safely sleep and did not expect an inspection. (Id.).

Contrary to the LCDC's rules, Plaintiff had laundry in his bed. (Id. at 64-65; Doc. 39, Ex. A, Incident Report ¶ 3). Defendant ordered Plaintiff to get out of bed and threw Plaintiff's mattress outside the cell into the day room. (Pl.'s Dep. at 65). Plaintiff retrieved his mattress and put it back on the bunk. (Id. at 65-66). Defendant then ordered Plaintiff to put it back in the day room, but Plaintiff refused. (Id. at 66; Doc. 39, Ex. A, Incident Report ¶ 4). Defendant handcuffed Plaintiff and escorted him out of the day room toward a hallway. (Pl.'s Dep. at 66, 68; Doc. 39, Ex. A, Incident Report ¶¶ 4-5).

Plaintiff claims that he submitted to handcuffing without any resistence and that Defendant shoved and pulled him into the day room. (Pl.'s Dep. at 66, 68). Although Plaintiff denies that he initially resisted, he admits that he and Defendant were out of sync as far as how fast they were moving. (Id. at 77-78). Plaintiff also acknowledged that he stiffened his body while Defendant attempted to move him through the day room and that Defendant could have concluded that he was resisting the officer's efforts to move him. (Id. at 79, 97). Plaintiff then states that just outside the door of the day room and into the hall, Defendant took him to the ground. (Id. at 78). Plaintiff maintains that he does not recall what exactly happened between reaching the door of the day room and being taken to the ground. (Id. at 79).

According to Defendant, Plaintiff repeatedly jerked away, told Defendant to remove his hands, and ignored Defendant's warning that he would be taken to the ground if he did not comply and stop jerking away. (Doc. 39, Ex. A, Incident Report ¶ 5). After Plaintiff ignored two warnings and continued to jerk away, Defendant took Plaintiff to the ground with a leg sweep. (Id. ¶¶ 4-5). Plaintiff landed on the ground with Defendant lying sideways on top of him. (Pl.'s Dep. at 84).

Defendant warned Plaintiff that if he tried to run he would be taken to the floor again. (Id. at 88). Defendant then escorted Plaintiff to a padded cell without further

5

incident. (Pl.'s Dep. at 78, 81). The entire incident lasted less than five minutes. (Id. at 89, 94). Plaintiff pleaded guilty to failing to obey the LCDC's rules in connection with this incident. (Id. at 92-94).

Plaintiff claims that he suffered injuries to his wrists, right thumb, and left knee as a result of this incident. (Id. at 17). Plaintiff's visible injuries were gone within about two weeks. (Id. at 49-50). Plaintiff took ibuprofen for his injuries. (Id. at 28, 40). No medical professional has definitively diagnosed any medical condition relating to Plaintiff's right wrist or left knee. (Id. at 47, 50).

When Defendant took Plaintiff to the floor, Plaintiff's left knee struck the floor, causing it to bruise. (Id. at 19, 21). No other part of Plaintiff's body was injured during his fall to the floor. (Id. at 17, 21). A nurse's note and a photograph of Plaintiff's knee reveal that Plaintiff had a nickel-sized abrasion on his knee. (Id. at 23-24; Doc. 39, Ex. A at 5; Ex. B at 3). The bruise disappeared within eight to nine days, and Plaintiff's left knee no longer gave him problems after one and a half to two months. (Pl.'s Dep. at 49-51). Plaintiff contends, however, that his left knee began hurting in the back and inside areas about ten months after the bruising and pain had initially resolved. (Id. at 51). Plaintiff is unaware of any medical diagnosis for his knee, other than a June 17, 2009 finding that there was no bruising. (Id. at 36-37, 47).

Plaintiff claims that he sustained bruising, abrasions, and swelling to his wrists and right thumb when Defendant lifted him from the floor by grabbing the chain between the handcuffs. (Pl.'s Dep. at 19-20, 22). Within an hour following the incident, a nurse noted that Plaintiff had redness around his wrists and gave him some ice. (Id. at 19, 23-24; Doc. 39, Ex. B at 3). Additionally, photographs taken of Plaintiff's wrists reveal no discernible wrist or thumb injury. (Pl.'s Dep. at 18; Doc. 39, Ex. A. at 4, 6). Plaintiff states that the wrist bruising and abrasions disappeared within two to three weeks after the incident. (Pl.'s Dep. at 50). X-rays taken of Plaintiff's wrists approximately nine months after the incident revealed no bone damage. (Id. at 29-30).

### III. ANALYSIS

Defendant argues, in pertinent part,[1] that his use of force was reasonable under the circumstances and that Plaintiff's de minimus injuries reveal a de minimus use of force. (Doc. 39, Br. at 9-13). Plaintiff responds that a genuine issue exists for trial because Defendant's and another officer's statements contradict each other as to whether the other officer notified Defendant that Plaintiff had not gotten up for

---

[1] Because the Court concludes that Defendant did not use excessive force against Plaintiff, this Order does not address Defendant's remaining arguments.

7

inspection. (Doc. 42 at 2). Plaintiff disputes other minor details contained in Defendant's declaration. (Id. at 3). Finally, Plaintiff asserts that the x-rays revealed "minimal ulnar minus variance" to his right wrist, which he believes could lead to more serious problems "such as arthritis." (Id. at 4). Defendant replies that the factual conflicts cited by Plaintiff are not material to any dispositive issue in the case and that Plaintiff lacks competence to render a medical opinion. (Doc. 44).

"Whenever prison officials stand accused of using excessive physical force" constituting "'the unnecessary and wanton infliction of pain' . . . , the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). Factors to be considered in this inquiry include: "a) the need for the application of force; b) the relationship between the need and the amount of force that was used; c) the extent of the injury inflicted upon the prisoner; d) the extent of the threat to the safety of staff and inmates; and e) any efforts made to temper the severity of a forceful response." Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009). Courts "give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." Id.

8

The use of force is necessary when an inmate creates a disturbance or becomes insubordinate. Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990). In this case, Plaintiff failed to appear for inspection, refused to follow Defendant's order to place his mattress in the day room, and stiffened his body such that Defendant could reasonably conclude that he was resisting Defendant's attempt to escort him to the day room. (Pl.'s Dep. at 53, 56, 65-66, 77-79, 97). Plaintiff ultimately pleaded guilty to failing to obey the LCDC's rules. (Id. at 92-94). In response and after repeated warnings, Defendant used minimal force by taking Plaintiff to the ground with a leg sweep. (Doc. 39, Ex. A, Incident Report ¶¶ 4-5).

Although de minimis injuries may form the basis of an Eighth Amendment excessive force claim, the extent of a plaintiff's injury is relevant to determine whether the use of force was necessary and "may also provide some indication of the amount of force applied." Wilkins v. Gaddy, ___ U.S. ___, 130 S. Ct. 1175, 1178 (2010). Here, photographs taken after the incident reveal only a scrape on Plaintiff's knee. (Doc. 39, Ex. A at 4-6). No medical professional has definitively diagnosed any significant medical condition relating to Plaintiff's right wrist or left knee. (Pl.'s Dep. at 36-37, 47, 50; Doc. 39, Ex. B at 3). Plaintiff admits that his visible scrapes and bruises resolved within three weeks or less. (Pl.'s Dep. at 49-50). Plaintiff's de

9

minimis injuries indicate that the amount of force applied was minimal.  Accordingly, the Court finds that Defendant is entitled to summary judgment.

## IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's motion for summary judgment (Doc. 39) is **GRANTED**.

The Clerk of Court is **HEREBY DIRECTED** to close this case.

**IT IS SO ORDERED**, this  25th  day of October, 2010.


_____
**RICHARD W. STORY**
United States District Judge

10

AO 72A
(Rev.8/82)